**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 26-mj-125 (MAU)** |
| **v.** | : | |
| | : | |
| **MIKELLEN CLEMENTS, A/K/A, "SNEE"** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Mikellen Clements, a/k/a "Snee," be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (Firearm/Other Dangerous Weapon) and 3142(f)(2)(A) (risk of flight) of the Bail Reform Act.

Between May 13, 2023 and August 11, 2024, the defendant participated in a conspiracy to illegally straw purchase and transfer firearms from Georgia to the Washington, D.C. area. During the course of this conspiracy, the defendant directed the straw purchase of 68 firearms, 16 of which have been recovered by law enforcement in the D.C. area. Several of those firearms have subsequently been linked to violent shootings, recovered from underage individuals, and individuals involved in the sale of illegal narcotics. Simply put, the defendant and his co-conspirators have contributed to the ongoing scourge of gun violence that plagues our community.

In March of this year, the defendant was arrested in his apartment with an additional five firearms, one of which was found inches from an infant. At the time of his arrest, the defendant was on pretrial release in a D.C. Superior Court case where he had been ordered not to possess any

firearms. Law enforcement subsequently traced several of the weapons recovered from the defendant's home to North Carolina and South Carolina. Thus, it appears that at the time of his arrest, while the defendant was on release in a pending criminal case, he was still engaged in the illegal trafficking of firearms.

Considering the factors specified under 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court and the safety of any other person and the community. Accordingly, the defendant should be detained pending trial.

## BACKGROUND

The defendant directed a firearms trafficking conspiracy that spanned from at least May 13, 2023 through August 11, 2024. Clements directed his co-defendants as to which firearms to buy, how money would be transferred to the straw purchaser, and drove the straw purchaser to and from the gun stores. He also personally drove the straw-purchased firearms from Georgia to Washington, D.C., himself, and when he was unable to do so, he directed others to transport the firearms for him. *See* Gov't Ex. 1, Excerpt of Cellebrite Download from Straw-Purchaser's Phone.

Between May 2023 and August 2024, at least 68 firearms were straw-purchased at the defendant's direction from federally licensed firearms dealers ("FFLs") in the Northern District of Georgia and then transported to the Maryland/Washington, D.C. area. As evidenced by ATF Form 4473s and sales receipts, the purchased firearms included Taurus pistols, Glock pistols, and several assault-rifle style pistols. Police reports indicate that approximately sixteen of the firearms have since been recovered in the Maryland or Washington, D.C. area, with the latest recovery occurring on or about July 19, 2026, in or around Baltimore, Maryland. Of the sixteen firearms:

- At least four of the firearms were recovered by law enforcement in connection with suspected drug-trafficking activities: Serial Nos. BWHU128, BYDL591, 23PMD-45112, USD000628.
- At least four of the firearms were recovered by law enforcement in connection with shootings: Serial Nos. BXDP651 (firearm used in targeted home shooting where one victim was grazed by bullet), BYGR342 (firearm used in drive-by shooting of a car where victim's child was present in the car with victim), XXY927 (found in vehicle linked to armed carjacking), USD000628 (firearm used in drive-by shooting involving 4 victims in Hyattsville, MD, including a baby, three days after firearm was purchased from FFL in Georgia); and
- At least three firearms were recovered by law enforcement in possession of underage persons prohibited from possessing firearms: Serial Nos. PRC770, XKR397, USD001623.

On March 1, 2026, the defendant was arrested in D.C. Superior Court case number 2026 CF2 003160 and was ordered detained pending trial. On July 24, 2026, the defendant's initial appearance was held in this Court in connection with a Federal Rule of Criminal Procedure Rule 5 hearing. The defendant continues to remain held in D.C. Superior Court case number 2026 CF2 003160.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:

(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making a pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

The Government seeks detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (felony involving possession of a firearm) and § 3142(f)(2)(A) (risk of flight). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or the defendant's return to Court should he be released. *See* 18 U.S.C. § 3142(e)(1). Here, the § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

**I. <u>The Nature and Circumstances of this Offense Merits Detention.</u>**

The nature and circumstances of this offense are serious and strongly weigh in favor of pretrial detention. The defendant is charged in connection with a conspiracy to straw purchase 68 firearms in the Northern District of Georgia. Of those 68 firearms, 16 of them have been

recovered by law enforcement in the Washington, D.C. area. And at least four of those firearms have been linked to serious violent crimes. Simply put, the defendant's trafficking of these firearms has fueled violent crime, including several shootings, in the D.C. area. The flow of illegal firearms into our community directly contributes to the ease with which violent criminals can obtain access to firearms they are otherwise prohibited by law from purchasing. And the defendant has been prolific in his trafficking and straw purchasing of firearms. Such conduct, unequivocally establishes that the defendant should be detained pending his transfer to the Northern District of Georgia to stand trial for his actions.

## II. <u>The Weight of the Evidence Against the Defendant Favors Detention.</u>

The second factor to be considered, the weight of the evidence, clearly favors detention.

In addition to the specific examples discussed below (*see infra* pp. 9-11), the overall evidence against Clements is strong. Financial records, phone records, text messages, Telegram messages, cell site data, Form 4473s, sales receipts, (which establish that the same straw purchaser made each of the firearms purchases) and witness testimony establish that Clements directed the firearms trafficking conspiracy—including which firearms to buy and the sending of money to the straw purchaser—and participated directly in the firearms trafficking to a significant degree. As to the trafficking offenses alleged in Counts Two through Seven, historical cell site data shows Clements making trips from Washington, D.C., to the Northern District of Georgia for the firearms purchases, and then returning to the Washington, D.C. area one to two days after the firearms were purchased. *See* Gov't Ex. 2, Historical Cell Site Data Excerpt. All of the firearms in these counts were subsequently recovered in the Maryland and Washington, D.C. area. All told, the evidence is strong, which weighs in favor of detention.

**III. <u>The Defendants' History and Characteristics.</u>**

The third factor, the defendant's history and characteristics favors detention. The defendant's criminal history clearly establishes a pattern by the defendant of failing to obey court orders. And at the time of his arrest, it appears that the defendant was likely in possession of weapons that had been illegally straw purchased and trafficked to D.C. This history unequivocally demonstrates that there are no conditions that the court can impose to ensure the safety of the community and the defendant's compliance with this Court's orders.

In May 2023, the defendant was convicted in D.C. Superior Court case number 2021 DVM 00135 of Contempt – Condition of Release violation and sentenced to 30 days confinement. The underlying facts of that case are violent and demonstrate that this Court cannot fashion any condition or combination of conditions that can assure the defendant's return to the Court or the safety of the community. *See* Gov't Ex. 7, Affidavit in Support of Arrest Warrant, CCN 21-175-020. In the early morning hours of December 1, 2021, MPD officers responded to an address in Southeast, Washington, D.C. for a report of an assault. *Id.* Upon arrival, officers learned that the defendant had assaulted the complainant. *Id.* Specifically, the complainant had told the defendant to get his belongings and leave the complainant's apartment. *Id.* An argument ensued during which the defendant snatched the complainant's phone from her hand and began to physically assault the complainant, hitting and kicking her about the face and body while the complainant was laying on her bed. *Id.* The defendant then pulled the complainant out of her bed and threw her into a glass mirror. *Id.* The defendant began to leave the complainant's apartment but stopped when the complainant's phone rang. *Id.* The complainant was able to take her phone back from the defendant and answer it, at which point the defendant began to assault the complainant again. *Id.* After the complainant began to call out for help, the defendant hung

up the complainant's phone and fled from the complainant's apartment. *Id.* At the time the defendant assaulted the complainant, he was subject to a Stay Away/No Contact Order, which directed the defendant to stay away and have no contact with the complainant and her address. *Id.*

On December 18, 2025, MPD officers responded to a noise complaint at an apartment in Southeast, Washington, D.C. Upon arrival, the officers spoke with the complainant who advised that earlier that evening she had gotten into a fight with the defendant. *See* Gov't Ex. 8, Gerstein Affidavit, CCN 25-190-138. Specifically, the defendant became upset and began to argue with the complainant after going through the complainant's phone. *Id.* During the argument, the defendant struck the complaint in the face multiple times with a closed fist. *Id.* The defendant then told the complainant "I'm going to kill you" and dragged the complainant from her seat onto the kitchen floor. *Id.* The defendant then fled from the complainant's apartment. *Id.* On December 19, 2025, the defendant was arrested and charged with Threating to Kidnap or Injure a Person and Simple Assault in D.C. Superior Court case number 2025 FD2 017286. Following his initial appearance, the defendant was released from detention. However, as a condition of his release the defendant was ordered not to possess firearms.

Yet three months later, the defendant did exactly that. On March 1, 2026, MPD officers were conducting a welfare check on five children residing with the defendant at an apartment in Southeast, Washington, D.C. *See* Gov't Ex. 9, Gerstein Affidavit, CCN: 26-027-228. After completing the welfare check, law enforcement learned that the defendant had an extraditable arrest warrant for conspiracy to commit firearms trafficking out of the Northern District of Georgia. *Id.* Law enforcement returned to residence and placed the defendant in handcuffs. *Id.* Officers then conducted a sweep of the apartment to check on the welfare of the five children in

the apartment. *Id.* In the rear bedroom of the apartment, an officer observed three black firearms cases and a black handgun laying in plain view on the bed. *Id.* Laying on the bed, just inches from the firearm, was an infant child. *Id.*




***Figure 1: A firearm and three Glock boxes inches from a toddler.***

Officers observed that multiple young children were in another bedroom directly across from the bedroom where the firearm was observed. *Id.* The doors to both bedrooms were partially ajar when police arrived at the apartment. *Id.* The defendant was the only adult present in the apartment. *Id.* Police obtained an emergency search warrant and, pursuant to that warrant, searched the apartment. *Id.* During that search, police recovered five Glock handguns, eight handgun magazines, 31 loose rounds of ammunition, two boxes of ammunition, a rifle magazine

loaded with 30 rounds of ammunition, and other firearms components, including one handgun barrel, five hand grips, one handgun trigger, and three speed loaders. *Id.* On August 31, the defendant pled guilty to illegally possessing the firearms recovered from his home. His sentencing is scheduled is for October 30, 2026.

The defendant's failure to comply with the terms of his pretrial release in his pending Superior Court case demonstrates there are no conditions the court can craft to assure the safety of the community. Accordingly, this factor weighs in favor of the defendant's detention,

**IV. <u>The Defendants Presents a Danger to Our Community.</u>**

The fourth and final factor—danger to any person or the community posed by the defendant's release—similarly weighs in favor of detention. The D.C. Circuit has noted that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," pretrial detention is available to "disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This factor requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

The defendant's firearms trafficking activities pose a significant danger to the community. For example, on November 11, 2023, historical cell site data shows that the defendant traveled south from D.C. to Georgia. The defendant called the straw purchaser several times that morning. During these calls, historical cell site data shows the defendant and the straw purchaser in the area of multiple Georgia FFLs. Historical cell site data then shows the defendant and the straw

purchaser in the area of Range, Guns, and Safes, another FFL. Approximately one hour later, the straw purchaser bought a Micro Draco (Serial No. USD000628) from Range. Historical cell site data shows the defendant in the area of the Range store during the entire purchase. Phone records show that minutes after the purchase, the defendant called co-defendant Laytayah Gross, who sent the straw purchaser approximately $800 via Cash App less than 30 minutes later. Firearms purchase records, financial records, and phone records show that several more guns were purchased at the defendant's direction that day. Historical cell site data then shows the defendant traveling north back to Washington, D.C., on November 12, 2023. *See,* Gov't Ex. 2 (Excerpt of Preliminary Historical Cell Site Analysis).

On Nov. 14, 2023, a drive-by shooting in Hyattsville, MD occurred, where an unknown assailant shot at multiple people, including a baby, and their parked vehicles. Preliminary NIBIN analysis matches the shell casings from that shooting to the same Micro Draco trafficked by Clements. *See* Gov't Ex. 3 (Nov. 14, 2023 Incident Police Report); Gov't Ex. 4 (NIBIN Report). The Micro Draco had been later recovered on Dec. 25, 2023 by Prince George's County Police in Laurel, MD, in a vehicle along with another firearm, 811 grams of suspected marijuana, 43 fentanyl pills, 122 hydrocodone pills, 2,356 USD cash, and 3 liters of promethazine, and in the possession of a person prohibited from possessing firearms due to age. *See* Gov't Ex. 5 (Dec. 25, 2023 Incident Police Report).

Another example further illustrates the defendant's dangerousness to the community. Historical cell site data shows that on April 19, 2024, the defendant again traveled from Washington, D.C. to Georgia. In the early afternoon of April 20, 2024, the defendant called Gross. Approximately 10 minutes later, Gross sent the straw purchaser approximately $700 via Apple Cash. Around two minutes later Gross sent the straw purchaser another $200 via Cash App. The

straw purchaser then bought a Micro Draco from Range, Guns & Safes, along with another Glock pistol, approximately half an hour later. Multiple other firearms were purchased at the defendant's direction that day. *See* Gov't Ex. 1. On May 1, 2025, the Micro Draco was recovered loaded and with 17 rounds in the magazine at a high school in Marlboro, MD by Prince George's County Police; the Micro Draco was in the possession of a 17-year-old who was walking towards a fight that appeared to have been brewing in the school cafeteria. *See* Gov't Ex. 6, May 1, 2025 Incident Police Report.

Here, the defendant poses an obvious and articulable threat to the community as evidenced by his actions in this matter, his recidivism, and his repeated failure to obey court orders. That the defendant would defy a court's order and possess, not one, not two, but five firearms while doing so demonstrates just how dangerous the defendant is to the community. This factor, along with the other three factors, weighs in favor of the defendant's detention without bond pending trial to ensure the safety of the community and the defendant's return to court.

## CONCLUSION

The Government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Benjamin Helfand*
Benjamin Helfand
D.C. 1658708
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, D.C. 20530
Phone: 202-252-7059
Email: Benjamin.Helfand@usdoj.gov